# CHARLESTON.

Electro Metallurgical Co. *v.* Montgomery.

Submitted February 20, 1912.    Decided April 23, 1912.

1. Logs and Logging—*Lease of Land—Construction—Timber.*

A lease of land by deed for ninety-nine years with appurtenances, including mining, lumbering and riparian rights, and as construed by the parties, is a grant of all the timber in place that may at the election of the lessee be removed by him or his assignee within the term of the lease.    (p. 757).

2. Same—*Contract—Construction—Option to Purchase.*

A contract, not a deed, between such lessee and another, whereby the latter agrees to locate a saw mill on the land and to saw and deliver to the former, as provided, "all the white oak and chestnut oak," he may find on the land "large enough to fill the bill", attached thereto, at a stipulated price, provided the lessee "will agree to sell" such contractor "all the lumber on said land other than the oaks above mentioned at the rate of $1.50 stumpage and give" him "free of charge all the side boards, etc., that he may get off said oak in bringing it to sizes specified in bill", he to "be allowed to cut all lumber he may wish on said premises not less than 12 inches at butt", is not an absolute sale of the timber other than the white oak and chestnut oak, but constitutes a mere option to purchase and remove the same, which if not exercised within a reasonable time will be treated as abandoned.    (p. 756).

3. Injunction—*Trespassing.*

Equity will enjoin the cutting of timber on land at the suit of the owner thereof against a trespasser with no right or title thereto.    (p. 757).

Appeal from Circuit Court, Fayette County.

Bill by the Electro Metallurgical Company against J. W. Montgomery.    Decree for defendant, and plaintiff appeals.

*Reversed and Decree for Plaintiff.*

*Payne & Hamilton,* for appellant.

*Osenton, McPeak & Horan,* for appellee.

Miller, Judge :

On final hearing on bill, answer and proofs, the court below,

by the decree appealed from, dissolved the injunction theretofore awarded, restraining defendant from cutting and removing the standing timber on a tract of four hundred and fifty acres of land and from cutting 'into lumber and removing logs already cut therefrom, and dismissed the bill.

Plaintiff asserted right and title to this timber as assignee of a lease of the land for ninety-nine years, from Charles Reader to the Wilson Aluminum Company, a corporation, dated May 28, 1897, the assignment being by deed dated January 30, 1907. The particular provision of the lease especially relied on is: "With appurtenances unto said party of the second part including mineral, lumbering and riparian rights, and all rights that the said party of the first part now has in respect to the water power incident to said lands, and with full power of assigning this lease and sub-letting the said lands and the water powers and other rights appurtenances thereto either in whole or in part separately or together, subject to the terms and conditions. herein contained, and with the rights in such sub-leases of assignees to remove his or their plant at the expiration of the terms of their leases provided all the terms and conditions of their leases having been fully complied with."

Defendant in his answer claims right and title to the timber which he was enjoined from cutting under an unrecorded contract with the Wilson Aluminum Company, dated August 26, 1899, but of which he alleges and the proof is plaintiff had notice, whereby he agreed to locate a saw mill upon said land and "to saw and deliver to said company" at a point designated below the Kanawha Falls, "all the white oak and chestnut oak" that he might find on said land "large enough to fill the bill" attached thereto, and as otherwise provided, "at the rate of $12.50 per thousand feet, *provided said company, will agree* to sell said Montgomery all the lumber on said land other than the oaks above mentioned at the rate of $1.50 stumpage and give the said Montgomery free of charge all the side boards, etc., that he may get off said oak in bringing it to sizes specified in bill. * * * * Said Montgomery to be allowed to cut all lumber he may wish on said premises not less than 12 inches at butt." The other provisions of the contract are immaterial to the issues presented.

Plaintiff relying on said lease contract and its assignment thereof alleges in its bill good title to said timber, with right and power to sell and dispose of the same; that the chief value of said land, aside from its riparian rights, is the coal and the growing and standing timber thereon; that said timber is necessary for carrying on the mining operation thereon, by a coal company, an under tenant, which requires large quantities of timber; and that the removal of said timber would irreparably injure plaintiff and said land for coal mining purposes; but it is not alleged or proven that defendant is insolvent.

Defendant relying on his said contract answers that he had possession of said land at the time plaintiff acquired said property, and that he "was the owner of all timber then on said land, which would measure at the butt not less than twelve inches."

The contract pleaded and relied on by defendant was not an absolute sale and purchase of the timber, other than the white oak and chestnut oak which he thereby bound himself to saw and deliver to the Aluminum Company. It amounted to nothing more than an option to him to purchase, remove and pay for the timber optioned within a reasonable time, not a sale and conveyance of the timber in place, to be removed at his pleasure, and limiting him to the timber twelve inches in diameter at the butt at the date of the contract. *McRae* v. *Stillwell,* (Ga.) 55 L. R. A. 513, and note, pp. 523, 533. Not having elected to take and pay for the timber claimed under his contract within a reasonable time, defendant must be treated as having abandoned the only remaining right he had, after completing his contract to saw and deliver to the Aluminum Company the oak timber as provided therein. He did not purchase the timber claimed by him, nor bind himself to take and pay for it at the price stipulated. He took no title to the timber, only an option to buy, which he failed to exercise, therefore he acquired no right or title to the timber to assert against plaintiff. The question is one of law, therefore, for the court, and not for the jury, and it is unnecessary to remit the parties to an action in ejectment to try title, if plaintiff has shown good title.

The bill we think good on demurrer, and contains all the necessary averments entitling plaintiff to relief, namely, good

title in plaintiff, threatened and wrongful destruction of the timber by defendant, and irreparable injury. *Fluharty* v. *Mills,* 49 W. Va. 446; *Pardee* v. *Camden Lumber Company.* 70 W. Va. 68, 73 S. E. 82.

The lease contract and the assignment thereof to plaintiff, we think, proves good title to the timber, at least such right thereto as entitles the plaintiff to protection against the defendant's trespass. It is said the legal title to the timber is in the lessor, Reader. But the lease is for ninety-nine years, with mining, lumbering and riparian rights. The lease is a deed granting these rights. Lumbering rights could mean nothing less, and the parties thereto have construed the contract as granting the right to take the timber and convert it into lumber at the election of the lessee or its assignee at any time during the term of the lease. Such a sale of the timber is in legal effect a conveyance of so much of the timber in place as may be removed within the term of the contract. *McRae* v. *Stillwell, supra; Null* v. *Elliott,* 52 W. Va. 229; *Adkins* v. *Huff,* 58 W. Va. 645; *Keystone Co.* v. *Brooks,* 65 W. Va. 512; *Brown* v. *Gray,* 68 W. Va. 555.

The right to the timber with privilege of removing it, or using it for mining purposes, as the bill alleges plaintiff has contracted its use, we think, upon the rules and principles enunciated in *Pardee* v. *Camden Lumber Co., supra.,* entitle it to protection by injunction against the trespasses of defendant. It is unnecessary here to do more than refer to that case for the reasoning and the rules and principles controlling this case.

Our conclusion is to reverse the decree below, and to enter such decree here as we think the circuit court should have entered, perpetually enjoining the defendant as prayed for in the bill.

*Reversed and Decree for Plaintiff.*